```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ETHAN LIEBERMAN,                                            :
                                                            :
                                                            :   MEMORANDUM DECISION
                              Plaintiff,                    :   AND ORDER
                                                            :
              - against –                                   :   19-cv-6989 (BMC)
                                                            :
                                                            :
                                                            :
AMERICAN EXPRESS COMPANY,                                   :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff brings this action for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* He contends that a credit entry in his credit report was inaccurate or misleading because it reflected a non-zero past due balance while reporting that the account had been charged off. I recently considered and rejected a similar claim from this plaintiff's counsel in <u>Artemov v. TransUnion, LLC</u>, No. 20-cv-1892, 2020 WL 5211068 (E.D.N.Y. Sept. 1, 2020).

Before me is defendant's motion to dismiss the complaint. Because plaintiff's credit entry was neither inaccurate nor misleading, defendant's motion is granted.

## BACKGROUND

The following factual allegations are taken from the amended complaint and assumed to be true for purposes of this decision.

Plaintiff's credit report listed a past due balance of $121,419.00 for a debt that had been charged off by American Express. Plaintiff notified the credit reporting agencies ("CRAs") Equifax, Trans Union, and Experian that he disputed the accuracy of the information being reported. Specifically, plaintiff wrote that the $121,419.00 balance was inaccurate because

"[t]his debt was charged off; therefore, the past due balance should be listed as $0."[1] Plaintiff claims that listing a past due balance on a charged off account misleads potential creditors into believing that he has an ongoing monthly liability.

American Express subsequently sent plaintiff a letter that it stated was in response to a debt validation request. The letter attached information regarding a different debt owed by a different person. Plaintiff alleges that American Express willfully or negligently failed to conduct a proper investigation into the accuracy of the information it reported to the CRAs, in violation of 15 U.S.C. § 1681s-2(b).

## DISCUSSION

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When assessing a complaint's sufficiency, the Court assumes that the factual allegations in it are true, but the Court disregards legal conclusions couched as factual allegations. Id.

---

[1] Plaintiff did not attach the dispute letters that he sent to the CRAs to the amended complaint and maintains that I cannot consider them here. Plaintiff does not suggest that the letters are inauthentic or have been altered in any way. Because the amended complaint describes and relies upon the letters and there is no dispute as to their accuracy, I may consider them here. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (district court could consider emails on motion to dismiss where the complaint referred to them and their contents); Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) ("'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." (citation omitted)).

2

**I.    FCRA Claims**

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). "The FCRA creates a private right of action . . . for the negligent or willful violation of any duty imposed under the statute." Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995) (citations omitted); see 15 U.S.C. §§ 1681n & 1681o. "A plaintiff may recover actual, punitive, or statutory damages for willful violations, but may recover only actual damages for negligent violations." Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 234 (S.D.N.Y. 2014).

The FCRA commands that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). If a consumer disputes information contained in his credit report to a CRA, the CRA is required to notify the entity that furnished the disputed information of the consumer's dispute. See Jenkins v. AmeriCredit Fin. Servs., Inc., No. 14-cv-5687, 2017 WL 1325369, at *4 (E.D.N.Y. Feb. 14, 2017). In considering a challenge under § 1681e(b) or § 1681i, the "threshold question" is whether the disputed credit information is accurate; if the information is accurate, "no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (citation omitted); see also Khan v. Equifax Info. Servs., LLC, No. 18-cv-6367, 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019).

When the CRA complies with its obligation to notify the challenged information's furnisher, the furnisher must conduct an investigation, review relevant information provided by the CRA, report the results of the investigation to the CRA, report any inaccuracies to all other

3

consumer reporting agencies to which the information was provided, and promptly modify, delete, or block the reporting of that information.  See 15 U.S.C. § 1681s-2(b).

Courts in the Second Circuit apply a "reasonable investigation" standard to determine whether a furnisher of information has satisfied its obligations under 15 U.S.C. § 1681s-2(b). See Mund v. Transunion, No. 18-cv-6761, 2019 WL 955033, at *2 (E.D.N.Y. Feb. 27, 2019). Under this standard, furnishers of information "satisfy their investigation obligations under the FCRA by reviewing information provided by the CRA, investigating, and reporting any inaccuracies to all consumer reporting agencies to which the furnishers provide information." Jenkins, 2017 WL 1325369, at *6 (internal quotation marks, citations, and alterations omitted). "The FCRA does not require that a furnisher of information delete a consumer's disputed account upon receiving a notice of dispute, but rather, 'simply requires the furnisher of information to investigate and to report information from the investigation.'" Id. (citation omitted).

A claim is stated under § 1681s-2(b) only if a plaintiff can show that: (1) the furnisher received notice of a credit dispute from a CRA; and (2) the furnisher then acted in "willful or negligent noncompliance with the statute."  See Markovskaya v. Am. Home Mortg. Servicing, Inc., 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012).  American Express does not dispute that the CRAs provided it with notice of plaintiff's dispute, so only the second prong is at issue here.

Accuracy is also an essential element of a claim for negligent or willful violation of § 1681s-2(b) of the FCRA.  See, e.g., Pittman v. Experian Info. Sols., Inc., 901 F.3d 619, 629 (6th Cir. 2018); Chiang v. Verizon New England Inc., 595 F.3d 26, 37-38 (1st Cir. 2010); Holland v. Chase Bank USA, N.A., --- F. Supp. 3d ----, No. 19-cv-233, 2020 WL 4340726, at *4 (S.D.N.Y. July 28, 2020).  Thus, "a threshold showing of inaccuracy or incompleteness is necessary to

4

succeed on a claim under § 1681s-2(b)." Pittman, 901 F.3d at 629. A credit entry is inaccurate if it "is patently incorrect, or [if] it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Kilpakis v. JPMorgan Chase Fin. Co., LLC, 229 F. Supp. 3d 133, 141 (E.D.N.Y. 2017) (citing Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890, 895 (5th Cir. 1998)).

## II. Charge Off

A charge off is "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." Charge Off, BLACK'S LAW DICTIONARY (11th ed. 2019). It qualifies as a delinquency. See Wilson v. First Bank of Delaware, No. 10-cv-11345, 2010 WL 2696981, at *3 n.2 (E.D. Mich. July 7, 2010) ("Delinquency is defined as 'a debt that is overdue in payment.'" (quoting Black's Law Dictionary)).

Charging off a debt "is a business practice where a creditor writes off a debt and no longer considers the account balance an asset for accounting purposes." Christian v. Equifax Info. Servs., LLC, No. 18-cv-13682, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020). Banks are in fact required under Federal Regulations to charge off debt that is past due by over 180 days. See In re Anderson, 884 F.3d 382, 386 n.2 (2d Cir. 2018) (citing 65 Fed. Reg. 36,903, 36,904). Otherwise, their balance sheets would misleadingly reflect accounts as assets that have little chance of achieving their full valuation. Thus, the generally accepted accounting principle is codified into federal regulations adopted by the Federal Reserve Board and the Office of the Comptroller of Currency. Because it is not a voluntary act, the creditor has no choice in the matter. See Wilder v. J.C. Christensen & Assocs., Inc., No. 16-cv-1979, 2016 WL 7104283, at *5 (N.D. Ill. Dec. 6, 2016); Bunce v. Portfolio Recovery Assocs., LLC, No. 14-2149, 2014 WL 5849252, at *2 (D. Kan. Nov. 12, 2014).

5

Creditors also have a financial incentive to charge off bad debt. By charging off a debt, a creditor is afforded some tax benefits since the amount constitutes "a bad loss deduction against then current profits." See In re McGarvey, No. 15-28908-E-13, 613 B.R. 285, 307 n.14 (Bankr. E.D. Cal. Feb. 21, 2020). If creditors could not write off bad debt, the result would be an increase in the cost of doing business and likely less credit availability and higher interest rates.

Since financial institutions are required to comply with this federal requirement, it follows that charging off an account does not equate to debt forgiveness. Any other conclusion would be illogical; it would simply encourage a consumer to take out massive amounts of debt and wait around six months for it to be wiped away. Thus, the act "does not diminish the legal right of the original creditor to collect the full amount of the debt." Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1297 (11th Cir. 2016); see In re McGarvey, 613 B.R. at 307 n.14 ("The creditor may continue to try and collect (or sell it to someone else to try and collect) the debt. The 'charge-off' does not change the legal enforceability of the debt."); Dye v. TransUnion, LLC, No. 13-cv-1094, 2013 WL 5663094, at *3 (D. Nev. Oct. 15, 2013) ("[Charged off] debt is still enforceable."). Creditors, for example, could attempt to collect the debt themselves – either by utilizing internal collections staff or by contracting with a third-party agent willing to collect the debt on their behalf. Alternatively, they could sell the debt to a third-party purchaser at a discounted price based on the reduced likelihood of collection. See Hinkle, 827 F.3d at 1297-98.

But charging off an account is not the same as "accelerating" the debt. See Christian, 2020 WL 2087869, at *1. "If a debt is accelerated, the full amount – including all monthly payments and interest – becomes due immediately." Id. Once a "debt is accelerated, the debtor would not be able to continue to make monthly payments in an amount less than the full amount

6

due." Id.  Conversely, if the debt has not been accelerated, a consumer is still able and obligated to make, and a creditor may still collect, a monthly payment on the account that is less than the full balance.  Id. at *4.

Lastly, a charge off is "one of the most adverse factors that can be listed on a credit report."  Hanks v. Talbots Classics Nat. Bank, No. C 12-2612, 2012 WL 3236323, at *1 n.2 (N.D. Cal. Aug. 6, 2012); see F.T.C. v. TRW Inc., 784 F. Supp. 361, 362 (N.D. Tex. 1991) (defining "Serious Derogatory Information" as, among others, a bankruptcy, charge off, foreclosure proceedings, and repossession).  In fact, according to Experian's website, a charge off is "considered a derogatory entry in your credit file – a serious negative event – and it can adversely affect your credit scores and your ability borrow additional funds."[2]

### III.   American Express reporting a past due balance

Having laid this foundation, it should be obvious that, even though American Express labeled plaintiff's account as charged off, it had no obligation to zero out the past due balance.  Charging off plaintiff's debt was mandated by federal regulation and did not absolve plaintiff of his promise to pay the debt.

Plaintiff takes issue with reporting a non-zero past due balance for another reason.  He contends that it suggests to a potential creditor that he must make monthly payments on this account.  To be clear, plaintiff does not allege that American Express reported a scheduled monthly payment.  Plaintiff's opposition brief muddies the waters by referring to the allegedly inaccurate line item as, *inter alia*, a "monthly amount," "monthly liability," "monthly balance due and owing," and "past-due monthly balance," but the amended complaint is clear:  plaintiff

---

[2] See https://www.experian.com/blogs/ask-experian/what-is-a-charge-off/ (last visited Sept. 10, 2020).

7

alleges only that the past due balance should have been $0 because the account was charged off.[3] Nor did plaintiff challenge any other item for this account in his letters to the CRAs, in which he wrote: "This debt was charged off; therefore, the past due balance should be listed as $0."

Thus, the out-of-circuit cases upon which plaintiff relies are distinguishable. In Jackson v. Equifax Info. Servs., LLC, No. 18-cv-271, 2019 WL 179570 (M.D. Ga. Jan. 11, 2019), the plaintiff's credit report incorrectly reported a scheduled monthly payment for an account that had been charged off. The court reasoned that "the monthly payment trade line could materially mislead a prospective lender about the nature of [p]laintiff's obligation to make payments on this account particularly when the account continue[d] to list a balance despite being charged off." Id. at *4. Jackson therefore hinged not only on the accuracy of the reported information, but on whether the combined reporting of a scheduled monthly payment and a positive balance on an account that had been charged off could materially mislead a prospective creditor. Relying on Jackson, the court in Foster v. Santander Consumer USA, Inc., No. 18-CV-4146, 2019 WL 3490463, at *11 (N.D. Ga. May 29, 2019), similarly held that the continued reporting of a monthly payment amount on a charged off account could be misleading.

This case is different. Merely listing a past due balance – an undisputed legal obligation – for a charged off account is quite different than incorrectly reporting a future monthly responsibility when such requirement no longer exists. See Lovelace v. Equifax Info. Servs. LLC, No. cv-18-408, 2019 WL 2410800, at *4 (D. Ariz. June 7, 2019) (plaintiff had sufficiently pled an inaccuracy, where the complaint alleged an erroneously scheduled monthly payment even though the account was charged off and closed and the payment schedule had been

---

[3] To the extent that plaintiff's opposition asserts that American Express reported any other inaccurate item, including a scheduled monthly payment, I decline to address that claim. Plaintiff cannot use his opposition to a motion to dismiss to amend the complaint. See Doe v. Merck & Co., 803 F. App'x 559, 560 n.3 (2d Cir. 2020) (stating a plaintiff may not amend the complaint through any document short of an amended pleading).

8

accelerated); Freedom v. Citifinancial, LLC, No. 15 C 10135, 2016 WL 4060510, at *6 (N.D. Ill. July 25, 2016) ("reporting a 'scheduled payment' could create the mistaken impression that [p]laintiff still owed on the account, which was not accurate because his debt had been discharged in bankruptcy").

Here, a prospective lender could not be misled. Rather, a potential creditor is provided accurate information: (1) that plaintiff still owes a past due balance on the debt; and (2) that plaintiff's willingness and ability to pay back a potential loan are questionable because, at any given moment, American Express (or a third-party purchaser) could decide to enforce the remaining delinquent balance.

If I were to adopt plaintiff's reasoning – that a charge off categorically precludes a creditor from reporting the total past due amount – it would vitiate the purpose of credit reporting companies: to present a fair representation of a consumer's ability and willingness to pay off debt, so as to encourage a creditor to extend a line of credit to him. See Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1158 (11th Cir. 1991). Under plaintiff's proposed regime, potential creditors would hesitate to extend credit until after completing an independent and more thorough investigation into the consumer's financial background, thereby likely increasing the cost of doing business and interest rates for consumers.

Because inaccuracy is necessary to plaintiff's claims and not satisfied here, see Pittman, 901 F.3d at 629, I do not reach whether defendant's letter to plaintiff indicates that American Express failed to conduct a reasonable investigation into plaintiff's dispute.

## IV. Balance is higher than the amount of credit extended

Plaintiff also alleges that the reported balance for the American Express account "is higher than the amount of credit he was extended." But plaintiff does not allege that the reported

9

past due balance is not the amount he owed on the account.  In fact, plaintiff clearly states in his opposition brief that he "is not challenging the *validity* or *existence* of the underlying debt, but Amex's ability to continue reporting a past-due monthly balance, which still appears on [p]laintiff's credit report as due and owing despite his account being charged-off."

There is an obvious reason for why a debt owed might be greater than the amount of credit extended and still be accurate: fees and interest.  It is not uncommon for a delinquent borrower to end up owing more than he borrowed or could have borrowed.  I did not need defense counsel's statement that fees and interest account for the discrepancy in this case because that possibility is obvious, and plaintiff does not argue that "he does not owe on the underlying debt."  Plaintiff's bare statement that the balance was higher than the amount of credit he was extended, without more, cannot provide a basis for his claims.

## CONCLUSION

Defendant's motion to dismiss is granted.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       September 13, 2020